IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
KANSAS CITY DIVISION

| | |
|---|---|
| **JACK HENRY & ASSOCIATES, INC.,** | |
| *Plaintiff,* | Case No. 3:26-cv-5011 (WBG) |
| vs. | |
| **DIGITALDOORS, INC.,** | |
| *Defendant.* | |

<u>**PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT
OF NONINFRINGEMENT AND INVALIDITY**</u>

Plaintiff Jack Henry & Associates, Inc., files this Complaint for Declaratory Judgment of Noninfringement and Invalidity against DigitalDoors, Inc. Plaintiff pleads and avers as follows:

<u>**NATURE OF THE ACTION**</u>

1.        This is an action for declaratory judgment that U.S. Patent Nos. 9,015,301 ("the '301 Patent") (Exhibit A), 9,734,169 ("the '169 Patent") (Exhibit B), 10,182,073 ("the '073 Patent") (Exhibit C), and 10,250,639 ("the '639 Patent") (Exhibit D) (collectively the "Asserted Patents") are not infringed and are invalid for failure to comply with one or more of the requirements of the United States Code, Title 35, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112. This action is brought pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the Patent Laws of the United States, 35 U.S.C. § 100 et seq., and for such other relief as the Court deems just and proper.

<u>**THE PARTIES**</u>

2.        Jack Henry & Associates, Inc. ("Jack Henry") is a Delaware corporation with its principal place of business located in Missouri, with customers located within this judicial District.

3.      Upon information and belief, DigitalDoors, Inc. ("DigitalDoors") is a corporation organized and existing under the laws of the State of Florida with its principal place of business at 4201 Collins Avenue, Suite 2103, Miami Beach, Florida 33140.

## JURISDICTION AND VENUE

4.      This is a civil action seeking declarations of invalidity and noninfringement of the Asserted Patents and, therefore, arises under the patent laws of the United States, 35 U.S.C. § 100 *et seq*. and further under the Declaratory Judgment Act 28 U.S.C. §§ 2201-2202.

5.      This Court has subject matter jurisdiction of this matter pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.      Jack Henry is a proper party in that, as set forth more fully below, DigitalDoors has accused Jack Henry products and Jack Henry customers, which use Jack Henry products, of infringing the Asserted Patents.

7.      Pursuant to its licensing agreement with its customers, Jack Henry has a contractual obligation to indemnify and defend certain customers who are accused of infringing a patent through the customer's use of a Jack Henry product.

8.      The Court therefore has subject matter jurisdiction of this matter under the Declaratory Judgment Act.

9.      This Court has personal jurisdiction over DigitalDoors.

10.     DigitalDoors is a non-practicing patent entity ("NPE").

11.     The primary purpose of DigitalDoors' business is to enforce patent portfolios, including the Asserted Patents.

12.     In furtherance of these business activities, DigitalDoors has previously filed and litigated the Asserted Patents in over sixty cases against numerous financial institutions across the country.

13.     Recently, DigitalDoors targeted and accused Jack Henry, a resident of this forum, of infringing the Asserted Patents. *See, e.g.*, *DigitalDoors, Inc. v. Flushing Bank*, 2:25-cv-1895 (E.D.N.Y.) (Dkt. 32-2 at ¶¶ 6-7) (alleging that infringing software systems "are offered by numerous vendors, including . . . Jack Henry & Associates, Inc."); *id.* at ¶ 61 (alleging "[m]ajor technology vendors, including . . . Jack Henry[], have developed and sold specific product lines (e.g., . . . 'SecurePort') expressly designed to implement these infringing functionalities."); *id.* at ¶ 142 (alleging "systems provided by vendors such as . . . Jack Henry (SecurePort)" infringe the Asserted Patents); *see also DigitalDoors, Inc. v Peapack Private Bank & Trust*, Case No. 1:25-cv-02349-RMB-AMD (D.N.J.) (Dkt. 18-6 at 4 (DigitalDoors also targeted Jack Henry in discovery and requested "documents relating to Sheltered Harbor that Peapack received from Jack Henry, and [] documents relating to Jack Henry Software…").

14.     In addition, DigitalDoors filed litigations against other businesses that reside in this District and specifically accused these businesses of infringing the Asserted Patents. *See, e.g.*, *DigitalDoors, Inc. v. UMB Bank, N.A.,* 2:24-cv-00320 (E.D. Tex.), Dkt. 1 (Complaint) at ¶ 4 ("Defendant is a foreign corporate fiduciary organized and existing under the laws of the State of Missouri, with a principal place of business located at Tenth and Grand, Kansas City, Missouri 64141."); *DigitalDoors, Inc. v. Bank of America, N.A,* 2:23-cv-00542 (E.D. Tex.).

15.     DigitalDoors has also filed and litigated cases against parties with offices and customers located in this District, again alleging infringement of the Asserted Patents. *See, e.g., DigitalDoors, Inc. v. JP Morgan Chase & Co*., 2:23-cv-00550 (E.D. Tex.); *DigitalDoors, Inc. v. Wells Fargo Bank, N.A.,* 2:24-cv-00310 (E.D. Tex.); *DigitalDoors, Inc. v. Simmons Bank*, 2:24-cv-00319 (E.D. Tex.); *DigitalDoors, Inc. v. Regions Bank*, 2:23-cv-00552 (E.D. Tex.); *DigitalDoors, Inc. v. PNC Bank, N.A*., 2:24-cv-00317 (E.D. Tex.); *DigitalDoors, Inc. v. First*

3

*National Bank of Omaha*, 2:24-cv-00314 (E.D. Tex.); *DigitalDoors, Inc. v. Stifel Bank*, 2:24-cv-00784 (E.D. Tex.).

16.     In each of those cases, DigitalDoors alleged that each of these defendants infringed the Asserted Patents through its business operations. Because each of these defendants have locations and customers in this District, such alleged infringing acts are conducted, at least partially, within this District.

17.     Upon information and belief, several of these litigations have resulted in DigitalDoors licensing all or part of its patent portfolio to customers in this District, which is the primary object of DigitalDoors' business operations.

18.     As one specific example, DigitalDoors sued UMB, a bank headquartered in this District. *See DigitalDoors, Inc. v. UMB Bank, N.A.,* 2:24-cv-00320 (E.D. Tex.).

19.     DigitalDoors resolved that matter via settlement with UMB. See *UMB Bank, N.A.,* 2:24-cv-00320, Dkt. 17 (Stipulated Motion to Dismiss with Prejudice) (requesting dismissal "according to the terms of an Agreement between the parties"). Upon information and belief, that resolution involved granting UMB (and its customers) a license to practice the Asserted Patents in this District.

20.     On information and belief, DigitalDoors has also resolved, through settlement or voluntary dismissal, approximately fifty cases filed against defendants with customers and/or locations within this District.

21.     Upon information and belief, DigitalDoors granted licenses to numerous former defendants that permit those defendants and their customers to practice the Asserted Patents within this District.

22.     Enforcing its patent portfolio is DigitalDoors' primary business activity, including generating license fees arising from patent infringement actions.

23.     DigitalDoors has therefore engaged in licensing activities and lawsuits that are directed towards this District, through its primary business model to generate license fees.

24.     Through its licensing activities, DigitalDoors licenses its patents to companies that allegedly practice their inventions in this District and those companies pay DigitalDoors a license fee for practicing the DigitalDoors invention in this District.

25.     Through its licensing activities, DigitalDoors conducts ongoing and continuous business in this District through obtaining license fees generated as a result of ongoing conduct occurring in this District alleged to infringe the Asserted Patents.

26.     DigitalDoors' purposeful direction of enforcement activities toward the forum constitutes performing business activities in this District thereby satisfying the Missouri Long Arm Statute and the minimum contacts supporting specific personal jurisdiction.

27.     This action concerns the same or similar patents which DigitalDoors asserted in prior actions against businesses that reside in this District and therefore stems from DigitalDoors' direction of business activities in this District.

28.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1400(b). As noted above, Digital Doors has purposefully directed its business activities towards this District by accusing banks and customers within this District of infringing the Asserted Patents and subsequently agreeing to license the Asserted Patents to banks and customers located within this District.

29.     The licenses that DigitalDoors grants provide businesses and consumers permission to practice the Asserted Patents within this District.

30.     Jack Henry has customers and users within this District who utilize Jack Henry Products which DigitalDoors has accused of infringement. Additionally, sales and use of the Accused Jack Henry Products occurred within this District and therefore at least part of the alleged infringement occurred within this District.

31.     Venue is therefore proper because, at a minimum, DigitalDoors would be subject to personal jurisdiction in this District if this District were a separate state.

## STATEMENT OF FACTS

32.     There exists a real and immediate controversy between Plaintiff and DigitalDoors concerning the invalidity of the Asserted Patents. DigitalDoors has instigated over sixty lawsuits, the majority of which are against banks. In each case, DigitalDoors has alleged infringement of one or more of the Asserted Patents.

33.     The Asserted Patents share a common specification and are all part of the same patent family, where the '169 Patent, '073 Patent, the '639 Patent claim priority to the parent '301 Patent.

34.     DigitalDoors recently accused Jack Henry of infringing the Asserted Patents. *See, e.g.*, *DigitalDoors, Inc. v. Flushing Bank*, 2:25-cv-1895 (E.D.N.Y.) (Dkt. 32-2 at ¶¶ 6-7) (alleging infringing software systems "are offered by numerous vendors, including . . . Jack Henry & Associates, Inc."); *id.* at ¶ 61 (alleging "[m]ajor technology vendors, including . . . Jack Henry[], have developed and sold specific product lines (e.g., . . . "SecurePort") expressly designed to implement these infringing functionalities."); *id.* at ¶ 142 (alleging "Defendant utilizes systems provided by vendors such as . . . Jack Henry (SecurePort)" that infringe the Asserted Patents); *see also DigitalDoors, Inc. v Peapack Private Bank & Trust*, Case No. 1:25-cv-02349-RMB-AMD (D.N.J.) (Dkt. 18-6 at 4 (requesting the defendant produce "documents

relating to Sheltered Harbor that Peapack received from Jack Henry, and [] documents relating to Jack Henry Software…").

35.     Jack Henry's "SecurePort" products are accused of infringement and are licensed to various customers by Jack Henry ("Accused Jack Henry Products").

36.     DigitalDoors has also accused Jack Henry customers of infringing the Asserted Patents. *See, e.g., DigitalDoors, Inc. v. WestStar Bank*, Case No. 7:25-cv-00110-DC-DTG (W.D. Tex.) and *DigitalDoors, Inc. v. City Bank*, Case No. 7:25-cv-00104 (W.D. Tex.).

37.     Jack Henry has agreed to indemnify and defend Weststar and City Bank for any claim of patent infringement by DigitalDoors against the Accused Jack Henry Products. Jack Henry therefore has standing as an indemnitor of the Accused Jack Henry Products.

### DigitalDoors' "Sheltered Harbor" Complaints

38.     DigitalDoors' complaints in district courts across the country mirror the same general allegations: (1) the banking industry developed a voluntary "standard" for protecting confidential information known as "Sheltered Harbor," (2) compliance with Sheltered Harbor necessarily requires infringement of the Asserted Patents, and (3) financial institutions that use products that comply with Sheltered Harbor therefore must be infringing the Asserted Patents. . *See, e.g., DigitalDoors, Inc. v. Flushing Bank.*, 2:25-cv-1895 (E.D. N.Y.), Dkt. 29 (Opinion and Order dismissing Complaint) at 2; *DigitalDoors, Inc. v. City Bank*, 7:25-cv-104 (W.D. Tex.), Dkt. 1 (Complaint); *see also DigitalDoors, Inc. v. Peapack Private Bank & Trust*, 1:25-cv-02349-RMB-AMD (D. N.J.) Dkt. 14 (Order) ("The allegations against [Defendant] Peapack are identical to those brought by DigitalDoors against fifty-nine other financial services institutions across the country. The complaints are near carbon copies of one another. DigitalDoors alleges that every financial services company that complies with 'Sheltered Harbor' data-security standards has necessarily violated its patents.").

7

39.     DigitalDoors admitted in signed court filings that compliance with "Sheltered Harbor" standards does not, in and of itself, necessarily lead to infringement of the Asserted Patents. *Flushing Bank*, Dkt. 26 at 1 (DigitalDoors Letter to the Court) (DigitalDoors admits that "while the Q2 Software provided to Defendant is Sheltered Harbor certified, it is not used for operations covered by claims of the patents in suit."); *See also id*., Dkt. 29 (Order) at 8 ("And critically, DigitalDoors's concession—that the Sheltered Harbor Certified Q2 Software used by Flushing Bank does not infringe the patents— undermines its theory of patent infringement. DigitalDoors has conceded that compliance with the regulations, and even use of Sheltered Harbor Certified software, does not necessarily infringe its patents.").

40.     Thus, the fact any product, including Jack Henry Products, complies with the voluntary Sheltered Harbor standards does not, by itself, suffice to support DigitalDoors' patent infringement theories of the Asserted Patents.

## COUNT I
## (DECLARATION OF NONINFRINGEMENT OF U.S. PATENT NO. 9,015,301)

41.     Jack Henry repeats and realleges every allegation contained in the foregoing paragraphs as if set forth fully herein.

42.     Jack Henry does not make, use, offer to sell, or sell any product and/or system within the United States, or import into the United States any product and/or system in a manner which infringes any claim of the '301 Patent.

43.     As set forth above, DigitalDoors alleges that at least one Jack Henry Product made, used or sold by Jack Henry or its customers infringes one or more claims of the Asserted Patents.

44.     Jack Henry denies that any of its products infringe the Asserted Patents.

45. A justiciable controversy exists between Jack Henry and DigitalDoors concerning the noninfringement of Jack Henry products of the Asserted Patents.

46. Jack Henry therefore seeks a declaratory judgment that its products do not infringe the '301 Patent.

## COUNT II
## (DECLARATION OF INVALIDITY OF U.S. PATENT NO. 9,015,301)

47. Jack Henry repeats and realleges every allegation contained in the foregoing paragraphs as if set forth fully herein.

48. Each and every claim of the '301 Patent is invalid for failure to comply with one or more of the requirements of the United States Code, Title 35, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112, and the rules, regulations, and laws pertaining thereto.

49. Each of the independent claims includes and requires the indefinite term "select content," which fails to inform a person of ordinary skill of the scope of the invention.

50. Representative claim 1 of the '301 Patent reads:

A method of organizing and processing data in a distributed computing system having select content important to an enterprise operating said distributed computing system, said select content represented by one or more predetermined words, characters, images, data elements or data objects, comprising:

providing in said distributed computing system, a plurality of select content data stores operative with a plurality of enterprise designated categorical filters which include content-based filters, contextual filters and taxonomic classification filters, said plurality of select content data stores and enterprise designated categorical filters operatively coupled over a communications network and distribution security levels for said select content;

activating at least one of said enterprise designated categorical filters and processing a data input therethrough to obtain said select content and contextually associated select content and taxonomically associated select content as aggregated select content;

storing said aggregated select content for said at least one categorical filter in a corresponding select content data store;

9

for said activated categorical filter, associating at least one data process from the group of data processes including a copy process, a data extract process, a data archive process, and a data distribution process, said copy process linked to a copy data store, said data extract process linked to one or more extract stores, and said data archive process linked to one or more archive data stores, said copy data store, extract stores and archive data stores all located in said in said [sic] distributed computing system, said data distribution process linked to said distribution security level for respective select content;

applying the associated data process to a further data input based upon a result of said further data being processed by said activated categorical filter utilizing said aggregated select content data and respectively copying, extracting or archiving data to the respective copy data store, extract stores and archive data stores and limiting distribution of said further data to the distribution security level for respective select content;

wherein activating said designated categorical filter encompasses an automatic activation or a manual activation and said automatic activation is time-based, distributed computer system condition-based, or event-based.

51. The term "select content" is not a known term of art in the relevant field of information management and data processing.

52. Instead, the '301 Patent describes "select content" as a term of subjective degree with contradictory definitions. For example, the '301 patent defines "select content" as (1) "of interest or importance to the enterprise" (Exhibit A, 3:4-5), (2) "important to an enterprise" (37:45-46), (3) "of particular interest to the user" (*id.*, 126:17-18), (4) "any critical or security sensitive word, character, image, or data object as pre-defined or as established by the user" (*id.*, 126:45-47), (5) "security sensitive content" (*id.*, 37:47), (6) having "value, such as intellectual property IP value" (*id.*, 37:47-49), and/or (7) "important in that its unauthorized release is some how detrimental to the enterprise" (*id.*, 37:49-51). The foregoing descriptions for the "select content" term are inconsistent and ambiguous and cannot be reconciled.

53.     In addition, the applicant's statements during prosecution only added confusion without clarity.   During prosecution, the applicant summarily concluded the subjective "importance" of the "select content" somehow distinguished the claimed invention over alleged "NOT important" content disclosed in the prior art. *See* Exhibit E ('301 File History Feb. 6, 2013 Amendment) at p. 70 ("Examiner should note that the claim recites that 'select content [SC] important to an enterprise operating said distributed computing system.' In the SPAM blocker of Moss '449, the data throughput is NOT important to the user. Therefore, the present invention is patentable over Moss '449[.]"). However, the applicant never explained how to objectively measure the alleged "importance" of the "select content."

54.     In view of the foregoing, the is no objective way to define or determine the scope of the claimed "select content." Thus, the term "select content" is indefinite under 35 U.S.C. § 112.

55.     An actual and live justiciable controversy exists between Jack Henry and DigitalDoors concerning the invalidity of the '301 Patent.

56.     Jack Henry seeks a declaratory judgment that claim 1, along with all other claims of the '301 Patent are invalid at least under 35 U.S.C. § 112.

57.     The '301 Patent is also invalid under 35 U.S.C. §§ 102 and/or 103 because every element of the claim was disclosed in at least one prior art reference and/or it would have been obvious to one of ordinary skill in the art ("POSITA") to combine multiple prior art references to create the claimed invention in the '301 Patent.

58.     The '301 Patent is also invalid under 35 U.S.C. § 112 because the specification does not contain sufficient written description that a POSITA would recognize that the inventor was in possession of the claimed invention.

59.     The '301 Patent is also invalid under 35 U.S.C. § 112 because the specification does not contain sufficient information to enable a POSITA to make and use the invention without undue experimentation.

## COUNT III
## (DECLARATION OF NONINFRINGEMENT OF U.S. PATENT NO. 9,734,169)

60.     Jack Henry repeats and realleges every allegation contained in the foregoing paragraphs as if set forth fully herein.

61.     Jack Henry does not make, use, offer to sell, or sell any product and/or system within the United States, or import into the United States any product and/or system in a manner which infringes any claim of the '169 Patent.

62.     As set forth above, DigitalDoors alleges that at least one Jack Henry Product made, used, or sold by Jack Henry or its customers infringes one or more claims of the Asserted Patents.

63.     Jack Henry denies that any of its products infringe the Asserted Patents.

64.     A justiciable controversy exists between Jack Henry and DigitalDoors concerning the noninfringement of Jack Henry products of the Asserted Patents.

65.     Jack Henry therefore seeks a declaratory judgment that its products do not infringe the '169 Patent.

## COUNT IV
## (DECLARATION OF INVALIDITY OF U.S. PATENT NO. 9,734,169)

66.     Jack Henry repeats and realleges every allegation contained in the foregoing paragraphs as if set forth fully herein.

67.     Each and every claim of the '169 Patent is invalid for failure to comply with one or more of the requirements of the United States Code, Title 35, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112, and the rules, regulations, and laws pertaining thereto.

68.     The only independent claim includes and requires the indefinite term "select content," which fails to inform a person of ordinary skill of the scope of the invention.

69.     Representative claim 1 of the '169 Patent reads:

1. A method of organizing and processing data in a distributed cloud-based computing system having select content represented by one or more predetermined words, characters, images, data elements or data objects, comprising:

providing in said distributed cloud-based computing system (a) a plurality of select content (SC) data stores for respective ones of a plurality of security (SEC) designated data and (b) a plurality of granular data stores, and (c) a cloud-based server, each SC data store having respective access controls thereat;

providing a communications network operatively coupling said plurality of SC data stores and cloud-based server;

with respect to data processed by said cloud-based system, extracting and storing said SEC designated data in respective SC data stores;

activating at least one of said SC data stores in said cloud-based computing system thereby permitting access to said SC data stores and respective SEC designated data based upon an application of one or more of said access controls thereat;

parsing remainder data not extracted from data processed by said cloud-based system and storing the parsed data in respective granular data stores;

said parsing and storing said remainder data including both (i) randomly parsing and storing said remainder data and (ii) parsing and storing said remainder data according to a predetermined algorithm based upon said SEC designated data and said SC data stores; and

withdrawing some or all of said SEC designated data and said parsed data from said respective data stores only in the presence of said respective access controls applied thereto.

70.     Claim 1 is the only independent claim of the '169 Patent and is representative of all claims.

71.     As discussed above, the term "select content" is not a known term of art in the relevant field of information management and data processing.

72.     The term "select content" appears in the preamble of claim 1, and there is no dispute that the preamble is limiting. For example, DigitalDoors admitted and agreed the

preamble is limiting in multiple litigations. *See, e.g., DigitalDoors v Broadway Bancshares, Inc.*, Case No. 7:25-cv-103-DC-DTG (W.D. Tex.), Dkt. 26 (Opening Claim Construction Brief) at p. 3; *DigitalDoors v Vantage Bank Texas*, Case No. 7:25-cv-109-DC-DTG (W.D. Tex.), Dkt. 28 (Opening Claim Construction Brief) at p. 3; *DigitalDoors, Inc. v. City Bank*, Case No. 7:25-cv-00104-DC-DTG (W.D. Tex.), Dkt. 32 (Opening Claim Construction Brief) at p. 3; *DigitalDoors, Inc. v. WestStar Bank*, Case No. 7:25-cv-00110-DC-DTG (W.D. Tex.), Dkt. 32 (Opening Claim Construction Brief) at p. 3.

73.     The '169 Patent claims priority to and shares a common specification with the '301 Patent.  Accordingly, the '169 Patent also describes "select content" as a term of subjective degree, describing that "select content" is (1) "of interest or importance to the enterprise", (2) "important to an enterprise", (3) "of particular interest to the user", (4) "any critical or security sensitive word, character, image, or data object as pre-defined or as established by the user", (5) "security sensitive content", (6) having "value, such as intellectual property IP value", and/or (7) "important in that its unauthorized release is some how detrimental to the enterprise". As discussed, these descriptions for the "select content" term are inconsistent and ambiguous and cannot be reconciled. The is no objective way to define or determine the scope of the claimed "select content." Thus, the term "select content" is indefinite under 35 U.S.C. § 112.

74.     As another example, the term "security (SEC) designated data" or "SEC designated data" is also indefinite under 35 U.S.C. § 112 because the plain claim language and the specification provide no objective standard to determine the scope of this term.

75.     The exact phrase "security (SEC) designated data" or "SEC designated data" does not appear in the specification, however, the specification describes corresponding "***sec***-con" data or "security sensitive content." For example, the specification states "the method and system

extracts **security sensitive content** […] In this manner, the remainder data is complementary to the **sec-con** or SC data. This extracted security sensitive data is stored for the corresponding security level…" Exhibit B ('169 Patent), 14:32-40; *see also id*., 130:9-10 (Abbreviation Table) ("sec" means "security" and "sec-con" means "security sensitive content"). During prosecution, the patent applicant confirmed the claimed "security designated data" corresponds to the security content or "Sec-Con" discussed in the specification. *See, e.g.,* Exhibit F ('169 File History Mar. 1, 2016 Amendment) at p. 7.

76. Thus, the claimed "security (SEC) designated data" or "SEC designated data" refers to the SEC-con or security sensitive content.

77. As discussed, the specification states "security sensitive" content could be "select content" and it could also be "deemed to be important in that its unauthorized release is some how detrimental to the enterprise." Exhibit B ('169 Patent), 39:23-27. For the same reasons that the above discussed "select content" term is indefinite, the claimed "SEC designated data" term, which corresponds to the security sensitive content in the specification, is also indefinite under 35 U.S.C. § 112. Put simply, the subjective and ambiguous terms "security (SEC) designated data" and "select content" fail to inform a person of ordinary skill of the scope of the invention.

78. An actual and live justiciable controversy exists between Jack Henry and DigitalDoors concerning the invalidity of the '169 Patent.

79. Jack Henry seeks a declaratory judgment that claim 1, along with all other claims of the '169 Patent are invalid at least under 35 U.S.C. § 112.

80. The '169 Patent is also invalid under 35 U.S.C. §§ 102 and/or 103 because every element of the claim was disclosed in at least one prior art reference and/or it would have been

obvious to one of ordinary skill in the art ("POSITA") to combine multiple prior art references to create the claimed invention in the '169 Patent.

81.     The '169 Patent is also invalid under 35 U.S.C. § 112 because the specification does not contain sufficient written description that a POSITA would recognize that the inventor was in possession of the claimed invention.

82.     The '169 Patent is also invalid under 35 U.S.C. § 112 because the specification does not contain sufficient information to enable a POSITA to make and use the invention without undue experimentation.

## COUNT V
## (DECLARATION OF NONINFRINGEMENT OF U.S. PATENT NO. 10,182,073)

83.     Jack Henry repeats and realleges every allegation contained in the foregoing paragraphs as if set forth fully herein.

84.     Jack Henry does not make, use, offer to sell, or sell any product and/or system within the United States, or import into the United States any product and/or system in a manner which infringes any claim of the '073 Patent.

85.     As set forth above, DigitalDoors alleges that at least one Jack Henry Product made, used or sold by Jack Henry or customers infringes one or more claims of the Asserted Patents.

86.     Jack Henry denies that any of its products infringe the Asserted Patents.

87.     A justiciable controversy exists between Jack Henry and DigitalDoors concerning the noninfringement of Jack Henry products of the Asserted Patents.

88.     Jack Henry therefore seeks a declaratory judgment that its products do not infringe the '073 Patent.

## COUNT VI
## (DECLARATION OF INVALIDITY OF U.S. PATENT NO. 10,182,073)

89.     Jack Henry repeats and realleges every allegation contained in the foregoing paragraphs as if set forth fully herein.

90.     Each and every claim of the '073 Patent is invalid for failure to comply with one or more of the requirements of the United States Code, Title 35, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112, and the rules, regulations, and laws pertaining thereto.

91.     Each of the independent claims includes the indefinite term "select content," which fails to inform a person of ordinary skill of the scope of the invention.

92.     Representative claim 1 of the '073 Patent reads:

1. A method of creating an information infrastructure for processing data throughput in a distributed computing system with respective ones of a plurality of filters, comprising:

identifying sensitive content and select content in said data throughput with respective initially configured filters of said plurality of filters, said sensitive content represented by one or more sensitive words, characters, images, data elements or data objects therein grouped into a plurality of sensitivity levels, said select content represented by one or more predetermined words, characters, images, data elements or data objects,

providing in said distributed computing system a plurality of secure sensitive content data stores and a plurality of select content data stores for said respective initial filters,

operatively coupling said respective initially configured filters, over a communications network with said distributed computing system, said plurality of sensitive content data stores and said select content data stores;

altering said respective initially configured filters by: (a) expanding one or both of said sensitive content and said select content in a designated filter, (b) contracting or reducing one or both of said sensitive content and said select content in said designated filter, and (c) imposing or removing a hierarchical or an orthogonal classification in said designated filter;

generating modified configured filters based upon said alterations with said designated filter; and,

organizing further data throughput in said distributed computing system with said modified configured filters.

93.     Claim 1 of the '073 Patent is representative of all claims.

94.     As discussed above, the term "select content" is not a known term of art in the relevant field of information management and data processing.

95.     The '073 Patent claims priority to and shares a common specification with the '301 Patent. Accordingly, the '073 Patent also describes "select content" as a term of subjective degree, describing that "select content" is (1) "of interest or importance to the enterprise", (2) "important to an enterprise", (3) "of particular interest to the user", (4) "any critical or security sensitive word, character, image, or data object as pre-defined or as established by the user", (5) "security sensitive content", (6) having "value, such as intellectual property IP value", and/or (7) "important in that its unauthorized release is some how detrimental to the enterprise". As discussed, these descriptions for the "select content" term are inconsistent and ambiguous and cannot be reconciled. The is no objective way to define or determine the scope of the claimed "select content." Thus, the term "select content" is indefinite under 35 U.S.C. § 112.

96.     As another example, the term "sensitive content" does not have any special meaning in the relevant field of information management and data processing.

97.     The terms "sensitive content" is also indefinite under 35 U.S.C. § 112 because the plain claim language and the specification provide no objective standard for evaluating "sensitivity" that would inform a person of ordinary skill in the art of the scope of the claimed invention.

98.     Moreover, the claims recite "identifying sensitive content and select content" and treat the "sensitive content" and "select content" as distinct categories or types of content. However, the specification contradicts the plain claim language and states "[s]elect content may

also be security sensitive content." *See* Exhibit C ('073 Patent), 39:23-24. The specification provides no guidance regarding how to objectively identify or distinguish between "sensitive content" and "select content."

99.    Moreover, as discussed, if the "sensitive content" is the same as the "select content," then the "sensitive content" is likewise indefinite under 35 U.S.C. § 112 for the same reasons as the "select content."

100.    An actual and live justiciable controversy exists between Jack Henry and DigitalDoors concerning the invalidity of the '073 Patent.

101.    Jack Henry seeks a declaratory judgment that claim 1, along with all other claims of the '073 Patent are invalid at least under 35 U.S.C. § 112.

102.    The '073 Patent is also invalid under 35 U.S.C. §§ 102 and/or 103 because every element of the claim was disclosed in at least one prior art reference and/or it would have been obvious to one of ordinary skill in the art ("POSITA") to combine multiple prior art references to create the claimed invention in the '073 Patent.

103.    The '073 Patent is also invalid under 35 U.S.C. § 112 because the specification does not contain sufficient written description that a POSITA would recognize that the inventor was in possession of the claimed invention.

104.    The '073 Patent is also invalid under 35 U.S.C. § 112 because the specification does not contain sufficient information to enable a POSITA to make and use the invention without undue experimentation.

## COUNT VII
## (DECLARATION OF NONINFRINGEMENT OF U.S. PATENT NO. 10,250,639)

105.    Jack Henry repeats and realleges every allegation contained in the foregoing paragraphs as if set forth fully herein.

106.    Jack Henry does not make, use, offer to sell, or sell any product and/or system within the United States, or import into the United States any product and/or system in a manner which infringes any claim of the '639 Patent.

107.    As set forth above, DigitalDoors alleges that at least one Jack Henry Product made, used or sold by Jack Henry or customers infringes one or more claims of the Asserted Patents.

108.    Jack Henry denies that any of its products infringe the Asserted Patents.

109.    A justiciable controversy exists between Jack Henry and DigitalDoors concerning the noninfringement of Jack Henry products of the Asserted Patents.

110.    Jack Henry therefore seeks a declaratory judgment that its products do not infringe the '639 Patent.

## COUNT VIII
## (DECLARATION OF INVALIDITY OF U.S. PATENT NO. 10,250,639)

111.    Jack Henry repeats and realleges every allegation contained in the foregoing paragraphs as if set forth fully herein.

112.    Each and every claim of the '639 Patent is invalid for failure to comply with one or more of the requirements of the United States Code, Title 35, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112, and the rules, regulations, and laws pertaining thereto.

113.    Each of the independent claims includes the indefinite term "select content," which fails to inform a person of ordinary skill of the scope of the invention.

114.    Representative claim 1 of the '639 Patent reads:

1. A method of processing data throughput in an information infrastructure in a distributed computing system with respective ones of a plurality of filters, comprising:

identifying sensitive content or select content in said data throughput with one or more of said plurality of filters, said sensitive content represented by one or more

sensitive words, characters, images, data elements or data objects therein grouped into a plurality of sensitivity levels, said select content represented by one or more predetermined words, characters, images, data elements or data objects;

extracting and storing said sensitive content from said data throughput in respective data stores based upon said plurality of sensitivity levels;

classifying both the extracted sensitive content and said select content with a taxonomic category filter and generating classification tags therefor;

associating respective classification tags to the classified extracted sensitive content and said select content;

using the classification tags for data processing the stored sensitive content and said select content with: (a) a data mining process; (b) a copy process; (c) a transfer process to other predetermined storage stores; (d) a supplemental data search process; and (e) a presentation process responsive to a data inquiry;

using the classification tags in a structured data format for the transfer process and data storage; and,

repeating the extraction and storage on further data throughput.

115. Claim 1 of the '639 Patent is representative of all claims.

116. As discussed above, the term "select content" is not a known term of art in the relevant field of information management and data processing.

117. The '639 Patent claims priority to and shares a common specification with the '301 Patent. Accordingly, the '639 Patent also describes "select content" as a term of subjective degree, describing that "select content" is (1) "of interest or importance to the enterprise", (2) "important to an enterprise", (3) "of particular interest to the user", (4) "any critical or security sensitive word, character, image, or data object as pre-defined or as established by the user", (5) "security sensitive content", (6) having "value, such as intellectual property IP value", and/or (7) "important in that its unauthorized release is some how detrimental to the enterprise". As discussed, these descriptions for the "select content" term are inconsistent and ambiguous and

cannot be reconciled. The is no objective way to define or determine the scope of the claimed "select content." Thus, the term "select content" is indefinite under 35 U.S.C. § 112.

118.    As another example, the term "sensitive content" does not have any special meaning in the relevant field of information management and data processing.

119.    The term "sensitive content" is also indefinite under 35 U.S.C. § 112 because the plain claim language and the specification provide no objective standard for evaluating "sensitivity" that would inform a person of ordinary skill in the art of the scope of the claimed invention.

120.    Moreover, the claims recite "identifying sensitive content and select content" and treat the "sensitive content" and "select content" as distinct categories or types of content. However, the specification contradicts the plain claim language and states "[s]elect content may also be security sensitive content." '639 Patent, 37:34-35. The specification provides no guidance regarding how to objectively identify or distinguish between "sensitive content" and "select content."

121.    Moreover, as discussed, if the "sensitive content" is the same as the "select content," then the "sensitive content" is likewise indefinite for the same reasons as the "select content."

122.    An actual and live justiciable controversy exists between Jack Henry and DigitalDoors concerning the invalidity of the '639 Patent.

123.    Jack Henry seeks a declaratory judgment that claim 1, along with all other claims of the '639 Patent are invalid at least under 35 U.S.C. § 112.

124.    The '639 Patent is also invalid under 35 U.S.C. §§ 102 and/or 103 because every element of the claim was disclosed in at least one prior art reference and/or it would have been

obvious to one of ordinary skill in the art ("POSITA") to combine multiple prior art references to create the claimed invention in the '639 Patent.

125. The '639 Patent is also invalid under 35 U.S.C. § 112 because the specification does not contain sufficient written description that a POSITA would recognize that the inventor was in possession of the claimed invention.

126. The '639 Patent is also invalid under 35 U.S.C. § 112 because the specification does not contain sufficient information to enable a POSITA to make and use the invention without undue experimentation.

## **PRAYER FOR RELIEF**

Wherefore the above stated reasons Plaintiff prays for a declaratory judgment against DigitalDoors as follows:

1. Find that all claims of U.S. Patent No. 9,015,301 are invalid.

2. Find that all claims of U.S. Patent No. 9,734,169 are invalid.

3. Find that all claims of U.S. Patent No. 10,182,073 are invalid.

4. Find that all claims of U.S. Patent No. 10,250,639 are invalid.

5. Find that no Jack Henry product infringes any claim of the Asserted Patents.

6. Declare this an exceptional case under 35 U.S.C. § 285 and award attorneys' fees

7. Award Jack Henry any additional relief as the court may deem just and proper under the circumstances.

February 16, 2026                    Respectfully submitted,

POLSINELLI PC

*/S/ JAY E. HEIDRICK*
Jay E. Heidrick
Missouri Bar No. 54699
POLSINELLI PC
900 W. 48th Place, Suite 900
Kansas City, MO 64112
T: (816) 753-1000
F: (816) 753-1536
jheidrick@polsinelli.com

Adam P. Daniels
California Bar No. 296466 (*Pro Hac Vice* pending)
Polsinelli LLP
2049 Century Park E., Ste. 2900
Los Angeles, CA 90067
Telephone: (310) 556-6754
Facsimile: (310) 556-1802
adaniels@polsinelli.com

Shaleen J. Patel
Georgia Bar No. 295554 (*Pro Hac Vice* pending)
Polsinelli PC
One Atlantic Center
1201 West Peachtree Street NW, Suite 1100
Atlanta, GA 30309
Sjpatel@polsinelli.com
Telephone: (404) 253-6000
Facsimile: (404) 253-6060

Iqra Iqbal
California Bar No. 353064 (*Pro Hac Vice* pending)
Polsinelli LLP
Three Embarcadero Center, Suite 2400
San Francisco, CA 94111
Telephone: (415)-248-2100
Facsimile: (415) 248-2101
iiqbal@polsinelli.com

*Attorneys for Plaintiff Jack Henry & Associates, Inc.*